IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

EVANGELISTA ESPINEL NARANJO, :
:
        Petitioner, :
:
v. :    CASE NO. 4:16-CV-173-CDL-MSH
:    28 U.S.C. § 2241
BILL SPIVEY, *et al.* :
:
        Respondents. :
_____

## **REPORT AND RECOMMENDATION**

Currently pending before the Court are Petitioner's application for habeas corpus relief (ECF Nos. 1, 5, 20) and his motions seeking an evidentiary hearing (ECF No. 55) and a decision in this case (ECF No. 59). For the reasons explained below, Petitioner's motions are denied and it is recommended that his application for habeas relief be denied.

## **BACKGROUND**

Petitioner is a native and citizen of Venezuela. Am. Pet. 12, ECF No. 5. He was first admitted into the United States (U.S.) on January 13, 1982, via a Non-Immigrant F1 student Visa. *Id.* at 14. His current detention by ICE began on October 7, 2015. *Id.* Petitioner had a variety of interactions with law enforcement between his first entry into the U.S. and his current period of detention.

In 1997, Petitioner pled guilty to seven criminal charges in the U.S. District Court for the Southern District of Florida. Resp'ts' Opp'n. to Pet. 2, ECF No. 13. The charges included "Failure to Report International Transportation of Currency" and "Structuring

Deposits in Order to Avoid Filing Currency Transaction Reports." *Id*. Petitioner was sentenced to seven concurrent 15 month imprisonments. *Id*. In January 1999, Petitioner was ordered removed from the country and he departed voluntarily in February of that year. *Id* at 3.

Petitioner attempted to re-enter the U.S. in both May 1999 and August 2005.[1] *Id*. Both times he was found inadmissible and removed under Expedited Removal orders. *Id*. On June 28, 2006, Petitioner was arrested and detained by ICE after reentering the U.S. a third time. The previous removal order against him was reinstated. *Id*. Petitioner then pled guilty to one charge of "Being Found in the U.S. After Deportation for an Aggravated Felony" in the U.S. District Court for the Middle District of Florida. In January 2007, he was removed from the U.S. to Venezuela pursuant to an ICE-issued Warrant of Removal. *Id*. at 4.

In November 2014, Petitioner again encountered ICE agents in the U.S. Petitioner was detained and held without bail per the order of a U.S. Magistrate Judge in the Middle District of Florida. *Id*. Petitioner pled guilty to one count of "Being Found in the U.S. After Deportation for Felony Offenses" and one count of "Unlawful Entry," and was given two consecutive eleven-month prison sentences. *Id*. On October 7, 2015, ICE executed an arrest warrant against Petitioner. *Id*. His current detention and related immigration proceedings arise out of the execution of that warrant.

---

[1] In 1999, Petitioner "presented himself for inspection as a visitor on a B-1/B-2 Visa." In 2005, Petitioner "attempted to enter the [U.S.] at or near Niagara Falls, New York." *Id*.

An asylum officer determined Petitioner presented a reasonable fear of persecution and his case was referred to the immigration court for review. *Id*. On February 9, 2016, Petitioner applied for Withholding of Removal and protection under the Convention Against Torture (CAT). Am. Compl. ¶ 34, ECF No. 20. His application was denied on September 12, 2016, following an August 29, 2016, merits hearing before an immigration judge (IJ). Am. Compl. ¶ 30, 36, 37. Petitioner appealed that decision, and the Board of Immigration Appeals (BIA) remanded the case to an IJ for further inquiry. Pet'r's Resp. in Supp. of Am. Compl. Ex. 2 at 5, ECF No. 37-2. Petitioner is currently awaiting the continuation of the remanded immigration proceeding. Meanwhile, he seeks habeas relief under both *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Sopo v. U.S. Attorney General*, 825 F.3d 1199 (11th Cir. 2016), arguing that he is subject to a final order of removal and has been held in detention for over six months with no reasonably foreseeable removal or, alternatively, has not received an administratively final removal order and is thus entitled to seek immediate release or bond hearing.

**DISCUSSION**

Petitioner seeks alternative relief under *Zadvydas* and *Sopo*. Because the Court finds that Petitioner is subject to a final order of removal, *Sopo* is inapplicable. Thus, the following analysis focuses on Petitioner's *Zadvydas* claim.

**I.   Detention Pending Removal**

A Petitioner may receive relief under *Zadvydas* only after he is subject to a final order of removal. The parties dispute whether Petitioner is subject to such an order. This Court concludes that he is, as his prior final order of removal has been reinstated.[2]

Petitioner's detention pending removal from the United States is therefore governed by section 241(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a). This provision grants the Attorney General a ninety-day period to effectuate an alien's removal from the United States following the entry of a final order of deportation or removal. INA § 241(a)(1)(A)-(B); 8 U.S.C. § 1231(a)(1)(A)-(B). Congress mandated detention of the alien ordered removed during this initial ninety-day period. INA § 241(a)(2); 8 U.S.C. § 1231(a)(2). The statute allows for the extension of this removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

The Supreme Court has found that section 241(a) of the INA authorizes detention of an alien following the entry of an administratively final order of deportation/removal, but only for a period "reasonably necessary" to effectuate the alien's removal. *Zadvydas*, 533 U.S. at 699-700. The Court recognized the difficulty lower courts might have

---

[2] Respondents argue, and the Court agrees, that Petitioner received a final administrative removal order, via the reinstatement of the original removal order against him. Resp. to Am. Compl. 10, ECF No. 23 ("Because that reinstated order is not subject to further administrative review . . . Naranjo's removal order was administratively final when ICE executed the warrant of removal and Naranjo was removed from the United States, and that final order was executed when ICE last removed him in January 2007.") (citing 8 U.S.C. § 1101(a)(47)(B)).

4

balancing the various interests at play in this area and established a six-month "presumptively reasonable" period of detention to provide a baseline of clarity. *Id*. at 701-02. Detention beyond that window loses the presumption of reasonableness. *Id*. at 701 ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing"). The relationship between the time of confinement and what qualifies as a reasonable period of detention is an inverse one. *Id*. ("[F]or detention to remain reasonable, as the period of prior post[-]removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

The Court of Appeals for the Eleventh Circuit interprets *Zadvydas* to require an alien to show: "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show post-removal detention in excess of six months [and] also provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

II. **Application of *Zadvydas* and its 11th Circuit Progeny**

Petitioner contends that he is entitled to relief under *Zadvydas* because he has been detained under an administratively final order longer than the presumptively reasonable

5

six-month period with no significant likelihood of removal in the reasonably foreseeable future. It is undisputed that Petitioner has been detained for more than six months and this Court agrees with Respondents that Petitioner is indeed subject to a final order of removal due to the re-instatement of the prior order against him. Therefore, the definitive question is whether Petitioner has presented "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and if so, whether the government has sufficiently rebutted that showing. *Gozo* 309 F. App'x at 346 ("Upon such a showing [that there is no significant likelihood of removal in the reasonably foreseeable future], the government has the burden of rebutting the alien's claim.").

A. Petitioner's Showing

Petitioner makes the requisite showing to require a rebuttal from Respondents. First, he shows that his administrative proceedings are prolonged and are ongoing with no definitive end date. Petitioner's immigration proceedings were transferred from Stewart Detention Center in Stewart, Georgia, to the immigration court in San Juan, Puerto Rico, which was temporarily closed. Pet'r's Notice Ex. 1 at 2, ECF No. 62-1. Proceedings then moved back to Stewart Immigration Court for a master calendar hearing on November 2, 2017. Pet'r's Resp. 2-3, ECF No. 67. Before the hearing the government submitted a motion seeking to transfer proceedings back to Puerto Rico. Pet'r's. Notice 1, ECF No. 68. The IJ scheduled a hearing on January 4, 2018, to consider this transfer motion. *Id.* at 2. Assuming the duration of the administrative process is roughly the same as Petitioner's last journey through the system, he will likely remain in detention for at least another nine

months.[3] This would place Petitioner's time in detention at nearly three years and extend it further beyond the presumptively reasonably period outlined in *Zadvydas*.

Petitioner also notes that the Executive Branch recently labeled Venezuela as "not fully cooperative with respect to receiving its nationals subject to final orders of removal from the United States." Pet'r's Notice Ex. 2 at 5, ECF No. 62-2. The President's official declaration that the country Respondents plan to remove Petitioner to is less than fully cooperative in the removal process bolsters Petitioner's argument but is not dispositive. Respondents concede that the Venezuelan government's cooperation is a necessary part of the removal of a Venezuelan national to that country. An official declaration that such cooperation is not always forthcoming constitutes evidence that Petitioner will not be removed in the near future.

Petitioner also shows that Respondents have not obtained travel documents (despite at least one attempt to do so) or designated a possible third country for removal. (ECF Nos. 37, 67.) This is also not dispositive evidence but does indicate that an immediate or swift removal in this case is unlikely. Under *Zadvydas*, the compilation of Petitioner's evidence of extensive forthcoming administrative proceedings, lack of receiving country cooperation, and remaining practical hurdles shows that removal in the reasonably foreseeable future is not significantly likely. Thus, the burden shifts to Respondents to show that removal in the reasonably foreseeable future is likely.

---

[3] Petitioner's last individual hearing before an IJ began in June 3, 2016, and a decision from the BIA on Petitioner's appeal of that decision by the IJ was not delivered until March 2, 2017. Pet'r's Suppl. Br. 2, ECF No. 37.

7

B.   Respondents' Rebuttal

Respondents have sufficiently rebutted Petitioner's showing with evidence that Petitioner's removal in the reasonably foreseeable future is likely. Respondents argue persuasively that there will be no obstacles to removing Petitioner following the conclusion of his administrative proceedings and that he should remain detained for their duration. Resp'ts Resp. 4, ECF No. 66 ("there is no barrier to removing [Petitioner] once his claim for withholding-only protection from removal is decided.").

Respondents acknowledge that Petitioner's administrative proceedings have been delayed, but correctly note that their delay is not eternal. In response to this Court's order to provide more information about the San Juan immigration court closure, Respondents stated that Petitioner's proceedings are not "indefinitely" delayed. Resp'ts' Resp. at 3. Respondents have shown that the administrative process' conclusion is not unforeseeable and delays in the process are not prohibited or dispositive in these cases.

On October 3, 2017, this Court ordered Respondents to provide any available information regarding "the underlying rationale for the President's labeling of Venezuela as not fully cooperative, including whether the U.S. has successfully removed any removable aliens to Venezuela since January 1, 2017, and if so, how many." Order for Resp., ECF No. 63 (internal quotation marks omitted). Respondents respond that the President's designation of Venezuela as "not fully cooperative" is insignificant here because it "has not prevented removals to Venezuela in 2017." Resp'ts' Resp. 3. They emphasize that "ICE has successfully removed 193 Venezuelan nationals from the United States thus far in fiscal year 2017." Id. Respondents admit they have not obtained travel

8

documents for Petitioner other than a passport and that such documents will "not be issued by the [Venezuelan] Consulate until the Ministry of Foreign Affairs can confirm that subject is a Venezuelan Citizen." Resp'ts Resp. Ex. 4, ¶ 7, ECF No. 66-4. Further, they concede that this process takes "approximately between three to six months." *Id*. However, the government's success this year in deporting Venezuelan nationals such as Petitioner is indicative of the likelihood that he will be removed promptly if or when such removal is necessary.

Respondents make one other crucial evidentiary showing. They have shown that Petitioner has been successfully removed to Venezuela twice before—in 1999 and again in 2007. Resp'ts' Opp'n. to Pet. 14. That Petitioner has been previously removed to Venezuela multiple times greatly increases the likelihood that Respondents will be able to do so again within the reasonably foreseeable future. This evidence also directly contradicts Petitioner's argument that his removal to Venezuela will be impermissibly delayed due to the government's inability to obtain travel documents or necessary cooperation from the Venezuelan government. Respondents have shown that they have achieved these tasks before, both for Petitioner and for other Venezuelan nationals in the last year. Thus, if the time comes for Petitioner to be removed, the government will not be attempting to re-invent the wheel and the evidence indicates they will likely be able to remove him swiftly if not immediately.

The Petitioner has been detained beyond the presumptively reasonable six-month period and his administrative proceedings have been delayed for various reasons with a swift conclusion unlikely. The President has specifically acknowledged the current

9

difficulty of arranging removals to Venezuela. The government has yet to secure travel documents, besides Petitioner's passport, despite at least one attempt to do so and admit that the process to obtain them will take at least three months. However, Petitioner has in fact been removed to Venezuela multiple times. Respondents have shown that they have also successfully removed numerous other Venezuelan nationals this year. Further, while administrative proceedings have been delayed, they have not been permanently stalled. Petitioner has made the required threshold showing, but Respondents have sufficiently rebutted his evidence with their own. Thus, it is recommended that Petitioner's applications for habeas corpus relief be denied.

### III. Petitioner's motions

Along with his original and amended applications for habeas relief, Petitioner filed motions seeking an evidentiary hearing (ECF No. 55) and a hearing or decision in this case (ECF No. 59). In his motion seeking a second evidentiary hearing, Petitioner asserted that "[a]n evidentiary hearing is again necessary" because the case was "in the same posture it was when this Court [first] wisely ordered an evidentiary hearing." Mot. for Hr'g 2, ECF No. 55. However, in considering the merits of this case the Court has not found such a hearing necessary. Accordingly, Petitioner's motion for a second evidentiary hearing is denied. Rules Governing § 2254 Cases in the U.S. District Courts 8(a)-(b). Further, this Court has now considered the merits of Petitioner's application for habeas relief and recommended that it be dismissed. Therefore, Petitioner's motion seeking a decision (ECF No. 59) is denied as moot.

## CONCLUSION

For the reasons explained above, it is recommended that Petitioner's applications for a habeas corpus relief be denied. Further, Petitioner's motions for a hearing (ECF No. 55) and for an evidentiary hearing or decision (ECF No. 59) are denied. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 22nd day of January, 2018.

/s/ Stephen Hyles  
UNITED STATES MAGISTRATE JUDGE